# HARDIN v. CHAPMAN et al.—255 S. W. (2d) 707.

Eastern Section.   November 19, 1952.

Petition for Certiorari denied by Supreme Court, February 6, 1953.

344

B. B. Fraker and Leon E. Easterly, both of Greeneville, for appellants.

Conway Maupin and Kyle King, both of Greeneville, for appellee.

HOWARD, J. This suit was filed by the complainant, Trixie Brown Hardin, against her sister Nellie

Brown Chapman, and her husband, Dan Chapman, to set aside a deed dated July 12, 1946, and executed by Mrs. Mary Brown, mother of complainant and Nellie Brown Chapman, in which the mother conveyed to defendants a tract of land consisting of several acres.

Complainant's bill alleges that her mother lacked mental capacity when the deed was executed; that the deed was procured by fraud, undue influence and over persuasion, and was without consideration; that the defendants claimed that said deed conveyed approximately 150 acres when it called for only 50 acres more or less.

The bill further alleges that practically all the lands held by Mrs Mary Brown at her death were previously acquired by her husband, who predeceased her, as tenants in common; that by deed dated April 17, 1893, and executed by R. J. McAmis, et al., Mrs. Brown and her husband acquired approximately eighty acres of land as tenants in common, the deed conveying said land "unto H. H. Brown and his wife, Mary Brown, equally and jointly"; that the language used in said deed precluded the right of survivorship in either husband or wife, and showed no intention of creating an estate by the entireties, and the bill sought to have the land owned by H. H. Brown sold for partition.

In their sworn answer the defendants denied that the deed was without consideration; denied that the grantor lacked mental capacity to make the deed, and denied there was any fraud or undue influence. They averred that as a consideration they had left their home in the State of Illinois, at the grantor's request, and had gone to the grantor's home in Greeneville, Tennessee, where they cared for her during the last years of her life. They further averred that the grantor and her husband acquired

title to the land as tenants by the entirety, and not as tenants in common, as insisted by the complainant.

Upon the hearing the Chancellor held that Mrs. Mary Brown and her husband took title as tenants in common to the eighty acres of land they purchased from R. J. Amis, et al., and that complainant and the defendant, Nellie Brown Chapman, being the daughters and only heirs of H. H. Brown, succeeded to their father's estate. A sale of the land for partition was ordered, but the order provided that the sale should be held in abeyance pending the final disposition of the suit.

The Chancellor also found that Mrs. Brown was in full possession of her mental faculties at the time she executed the deed on July 12, 1946; that there was no fraud, coercion or undue influence in connection with the transaction, and that there was consideration for the deed, namely: (1) That the defendants "left their home in Illinois and moved to Tennessee in order to care for the * * * decedent for the remainder of her life," and (2) that the defendants were to pay the funeral expenses of Mrs. Brown.

The Chancellor further held that the deed to defendants conveyed only forty-nine and one-half acres.

From the Chancellor's decree the defendants have appealed to this Court, assigning errors in which insistence is made that the Court erred in holding, (1) that the deed from the McAmises dated April 17, 1893, to H. H. Brown and wife, Mary Brown, conveyed title to the grantees as tenants in common instead of by the entirety; (2) that the deed from Mrs. Mary Brown to defendants executed and delivered on July 12, 1946, conveyed to the defendants only forty-nine and one-half acres instead of all of the lands north of a boundary designated by the

deed, and (3) that defendants were liable for the funeral expenses of Mrs. Mary Brown.

Taking up the assignments in their regular order, the first question presented is whether or not under the deed executed by the McAmises on April 17, 1893, the Browns took title to the land described therein as tenants in common or tenants by the entirety.

■ "An estate by entirety which is a form of co-ownership held by husband and wife with right of survivorship, is defined as an estate held by husband and wife by virtue of title acquired by them jointly after marriage." 41 C. J. S., Husband and Wife Section 34, page 458. And "an estate by the entireties involves the unities of time, title, interest, and possession, as well as the husband and wife unity of ownership." 26 Am. Jur., Sec. 71, p. 698.

■ It is the general rule governing the construction of deeds, when it is sought to determine what estate was conveyed thereby, to ascertain the intention of the parties, if possible, by giving to each word of the deed its appropriate meaning and enforce that intention. Myers v. Comer, 144 Tenn. 475, 234 S. W. 325, 326.

In Myers v. Comer, supra, a conveyance made to husband and wife, "jointly and severally in equal moieties" was held to create a tenancy in common.

In the present case the McAmis deed makes no reference to the words "severally in equal moieties" as in Meyers v. Comer, supra, and we think that the rule stated therein is not controlling here. The following are the pertinent parts of the McAmis deed:

"We, R. J. McAmis and wife, Fannie W. McAmis, and J. E. McAmis and wife, Florence McAmis, have bargained, and sold, and do hereby transfer and con-

vey· unto H. H. Brown and his wife, Mary Brown, equally and jointly the following described real estate."

The habendum clause reads as follows:

"To have and to hold the same to the said H. H. Brown and Mary Brown, their heirs and assigns forever."

Under the covenants of warranty appears the following language:

"We hereby bind ourselves, our heirs and representatives to warrant and defend the title thereof to the said H. H. Brown and Mary Brown, their heirs and assigns, forever, * * *"

No extrinsic evidence was introduced showing that the title to the lands was acquired by the Browns as tenants in common, as in the case of Faulkner v. Ramsey, 178 Tenn. 370, 158 S. W. (2d) 710, where the Court held that the grantees acquired title as tenants in common. Therefore, we can only consider the deed and the language used therein in ascertaining the true intent of the parties.

Besides conveying title to Brown and his wife, the deed also recites that they jointly executed four notes securing the unpaid purchase money, which were subsequently paid by their joint efforts. Neither Brown nor his wife ever indicated that the title to the land was acquired by them as tenants in comon, and after Brown's death in 1928 his wife continued to occupy the property as sole owner until her death in 1949. Complainant at no time prior to her mother's death ever raised the question that the land involved was held by her mother and father as tenants in common, and said question probably never would have been made had it not been for the deed exe-

cuted by Mrs. Brown on July 12, 1946, which deed by this proceeding complainant seeks to set aside.

It is generally held that a tenancy by the entirety is created when a husband and wife take an estate to themselves jointly, and such will be presumed where words do not appear to the contrary or, as in the instant case, where the language used is ambiguous. Bost v. Johnson, 175 Tenn. 232, 133 S. W. (2d) 491.

Regarding estates created by the entireties, the Court, in Bennett v. Hutchens, 133 Tenn. 65, 179 S. W. 629, 630, said:

"By the authorities it is held that a deed to husband and wife, which would at common law have created in them an estate in joint tenancy, had they not been married, does, by the fact of the marriage, create in the husband and wife an estate by the entireties.

\*　\*　\*　\*　\*　\*

" 'If an estate be given to a man and his wife they are neither properly joint tenants nor tenants in common; for husband and wife being considered as one person in law, they cannot take the State by moieties but both are seized of the entirety, per tout, et non per my, the consequence of which is that neither the husband nor the wife can dispose of any part without the assent of the other, but the whole must remain to the survivor.' 2 Bla. Com., 182.

" 'The authorities agree that "the same words of conveyance which would make two other persons joint tenants will make a husband and wife tenants of the entirety, so that neither can sever the jointure, but the whole must accrue to the survivor," ' Cole Manufacturing Co. v. Collier,, 95 Tenn. (11 Pick.),

[115] 116, 117, 31 S. W. 1000, 30 L. R. A. 315, 49 Am. St. Rep. 921.

" 'The properties of a joint estate are derived from its unity, which is fourfold—the unity of interest, the unity of title, the unity of time, and the unity of possession; or, in other words, joint tenants have one and the same interest, accruing by one and the same conveyance, commencing at one and the same time, and held by one and the same undivided possession.' 2 Bla. Com., 180."

Under the circumstances the word "jointly" being defined by the authorities as "in a joint manner; together; *unitedly; joined together,*" we think that the grantees, were conveyed an estate by the entireties instead of as tenants in common, as held by the learned Chancellor.

Next it is the defendants' insistence that the deed executed by Mrs. Mary Brown dated July 12, 1946, conveyed to them all the lands consisting of 145.6 acres north of a certain line referred to in the deed, and that the Chancellor erred in holding that the deed conveyed only 49½ acres.

The record discloses that this deed was executed under the following circumstances: That complainant and Mrs. Brown, who was 87 years of age and lived alone, lived on adjacent farms about four miles outside of Greeneville, but because of a disagreement they had in 1945, complainant refused to visit her mother or have anything to do with her; that despite Mrs. Brown's age she looked after the renting of her 200 acre farm and other matters connected therewith; that before the deed in question was executed a relative from Greeneville went to the defendants' home in Illinois and advised them that Mrs. Brown was living alone and that they should go to Greeneville

and make some arrangements to care for her; that about July 1, 1946 the defendants left their home in Illinois, where Chapman had a good job, and came to Tennessee where they made an agreement with Mrs. Brown that they would move to Tennessee and care for her for the rest of her life, and as a part of the consideration for so doing Mrs. Brown executed the deed conveying to them the land in dispute.

The record further discloses that the deed executed by Mrs. Brown was prepared by Judge Doty, County Judge of Greene County, who testified that he went to her home where he was told by her that she wanted to make a deed to the defendants, and that she pointed out the property which was to be conveyed; that when he asked her how many acres to include in the deed, she replied, ''there is no use counting acres, I am deeding it by the boundary, just put it about fifty acres,'' and ''I won't ask Dan to come here and give up a good paying job and stay with me, I have stayed by myself as long as I can.'' That after the deed was prepared he read it to her and she stated that it was just what she wanted. The following is a description of the lands conveyed in the deed:

''Situate in District No. 12 of Greene County, Tennessee, Adjoining the lands of W. O. Ross, Mrs. Charles Cox and the land formerly owned by Andy Miller and more particularly described as follows, beginning at a set stone in Highway No. 93 a distance of about 80 feet S. of the concrete culvert under said highway and running with the old orchard fence a westerly direction to the Cox lands; thence with Cox's line a northerly direction to the lands of W. O. Ross; thence with his line to the Miller land; thence with Miller's line a southern direction to a point in his line

parallel with the beginning corner, thence a direct line to the beginning, estimated to contain 50 acres, more or less, but without regard to what it contains it is my desire to convey all my land lying north of a line running from the Miller lands to the Cox line said line to run parallel with the old orchard fence a short distance north of the dwelling I now occupy.

"Part of the above land was conveyed to H. H. Brown and wife, Mary Brown, by L. K. Cox May 7, 1887, and registered in Deed Book No. 51 page 445 in the Register's Office in Greeneville, Tennessee. Also by deed by J. E. McAmis and others by deed dated April 17, 1893 and registered  *  *"

We think that the Chancellor erred in holding "That none of the R. J. McAmis lands was conveyed by said deed," and that the deed conveyed only 49½ acres.

While the deed refers to the land conveyed as being "50 acres, more or less," we do not think this figure controlling in the light of the other provisions in the deed. By the provision in the deed "but without regard to what it contains it is my desire to convey all my land lying north of a line running from the Miller lands (apparently Martin lands as appears on the map introduced in evidence) to the Cox line," Mrs. Brown more definitely described the land she intended to convey, and by specific reference to the Cox and McAmis deeds she included in the conveyance all of the lands acquired by said deeds lying north of said line. To construe the deed otherwise would exclude the McAmis land from the conveyance, and this apparently was not the intention of the grantor.

As a general rule where a deed contains both a recital of acreage and a particular description, as here,

the latter controls. In 26 C. J. S., Deeds, Section 100, pages 367, 368, 369, it says:

"While whether a particular description or a statement as to quantity, contained in a deed, will control is primarily a question of intention to be gathered from the deed, the general rule is that, where a deed contains an adequate, particular description of the property conveyed, it will not be controlled by a recital therein of the quantity, unless it clearly appears that it was the intention to convey only a definite quantity. Such a recital may be resorted to for the purpose of making certain that which is uncertain, as where the boundaries of the land conveyed are doubtful. So, in the absence of other definite description, quantity may have a controlling weight. Quantity, however, is the least certain of all the elements of description which are usually found in a deed, and the recital as to the number of acres has perhaps the least influence of any of the matters which may be considered in determining what land is conveyed; as a general rule all other elements of description must lose their superior value through ambiguities and uncertainties before resort can be had to the recital as to quantity.

\* \* \* \* \* \*

"Different descriptions, or different items of the description, will be reconciled, if possible, at least where the rights of third persons have not intervened; but, where there is inconsistency or repugnancy, that description which best expresses the intention of the parties, as ascertained by due construction of the deed, will prevail, or, as otherwise stated, preference will be given to the part of the

description most likely to express the intention, and as to which there is the least likelihood of mistake.

"The more certain, or, as sometimes expressed, the more material and certain, description will control, or prevail over, a less certain, or a less certain and material, one, unless the contrary intention of the parties is evident."

■ It is the rule in this state that where any reasonable construction of a deed will render a description sufficiently definite to show what property was intended to be conveyed, the court should adopt such construction. Gernt v. Floyd, 131 Tenn. 119, 174 S. W. 267.

According to the survey made in 1950, we think Mrs. Brown conveyed to the defendants the land designated on the surveyor's map as "Lot No. 2 property of Nellie Chapman and husband Dan Chapman."

Finally, we think that the learned Chancellor also erred in holding that the defendants were liable for the funeral expenses of Mrs. Brown. The only proof in the record as to what the defendants agreed to do in return for the deed is furnished in the testimony of the defendant Nellie Brown Chapman, who testified as follows:

"Q. 41. Without going into detail as to conversations there, did you or not reach an understanding with your mother about taking care of her? A. My mother said she had a proposition to make us, and I asked her what it was, and she said she would deed us some land if we would come back and let her make her home with us after our house was finished, but she would rather stay at her own home, and we stayed there until our house was finished, which was fourteen months."

We have been referred to no Tennessee case wherein the question of whether an agreement to support and maintain a person during life includes the payment of funeral expenses. However, provisions for life support have generally been interpreted as not to include the payment of funeral expenses. 50 Am. Jur., Sec. 12, p. 877. It has been held in West Virginia, Georgia, Iowa and Pennsylvania that the liability for the payment of funeral expenses was not included in the obligation to support a person during life. 101 A. L. R. 1499.

In the instant case the record shows that Mrs. Brown had an estate fully capable of paying her funeral expenses, even after the conveyance to the defendants, and by the terms of her will which she executed two weeks prior to the date of defendants' deed, she directed that "my executor * * * pay * * * all of my just debts, including funeral expenses * * *" In the absence of proof showing that it was the intention or agreement of the parties that the support of Mrs. Brown during her lifetime included the payment of funeral expenses, it was error of the Chancellor to so hold.

It results that the three assignments of error will be sustained, the decree of the Chancellor will be reversed, and a decree will be entered in this Court holding, (1) that the deed executed by R. J. McAmis, et al., to H. H. Brown and wife, Mary Brown, conveyed an estate by the entirety; (2) that the deed executed by Mrs. Mary Brown July 12, 1946, conveyed to the defendants, Nellie Brown Chapman and Dan Chapman, all the "land lying north of the line running from the Miller (Martin) lands to the Cox line," etc., and (3) that the defendants under the proof are not liable for Mrs. Brown's funeral expenses. The costs will be adjudged equally between the parties.

McAmis and Hale, JJ., concur.