# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
September 19, 2013 Session

## ROBBIN MORROW ELLIOTT ET AL. v. MICHAEL R. MORROW

**Appeal from the Chancery Court for Meigs County**
**No. 4392     Frank V. Williams, III, Chancellor**

_____

**No. E2013-00692-COA-R3-CV - Filed December 23, 2013**

_____

In this real property dispute, the plaintiffs, three siblings, brought a complaint against the defendant landowner, a fourth sibling, alleging that he was trespassing on an approximately 15-acre parcel of land deeded to them by their mother and requesting that the trial court declare the plaintiffs as the rightful owners of the disputed acreage. Following a bench trial, the trial court dismissed the plaintiffs' complaint, finding that despite an ambiguity in the relevant deed, the parties' mother intended to convey the disputed acreage to the defendant as part of a larger 28.33-acre parcel in 1988. The plaintiffs appeal. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and D. MICHAEL SWINEY, J., joined.

H. Chris Trew, Athens, Tennessee, for the appellants, Robbin Morrow Elliott, Larry D. Morrow, and Joyce Elliott.

D. Mitchell Bryant, Athens, Tennessee, for the appellee, Michael R. Morrow.

## OPINION

### I. Factual and Procedural Background

Robbin Morrow Elliott, Larry D. Morrow, and Joyce Elliott, the Plaintiffs, and Michael R. Morrow, the Defendant, are all adult children of Hubert and Bobbie Sue Morrow. In 1950, the elder Morrows acquired in fee simple a 105-acre tract of real property

("Property") in Meigs County. Hubert Morrow died in 1987, thereby establishing ownership of the Property in Bobbie Sue Morrow[1] as surviving tenant by the entirety. On January 12, 1988, Bobbie Sue Morrow conveyed by warranty deed to Defendant and his then-wife, Ima Jean Morrow,[2] a parcel of land that was described in the instrument as "28.33 acres, more or less." The warranty deed was recorded on November 21, 1988. A January 9, 1988 survey prepared by William W. Roberts and used for a complete description of the property was referenced in the deed. The survey contains the notation, "28.33 acres, more or less," and depicts a metes and bounds description for the entire 28.33 acres. The deed, however, while it identifies the acreage as 28.33, includes a metes and bounds description for only an approximately 13-acre portion of the 28.33 acres. The instant dispute concerns the remaining approximately 15-acre area ("Disputed Area") of that 28.33 acres.

On August 6, 1999, Bobbie Sue Morrow conveyed via quitclaim deed all of her remaining interest in the Property to one of the plaintiffs, Robbin Morrow Elliot, and Alan T. Morrow, a fifth sibling who is not a party to this action. That quitclaim deed was also recorded on August 6, 1999. On July 31, 2006, Robbin Morrow Elliott and Alan Morrow conveyed their interest in the Property to Plaintiffs via quitclaim deed.[3] The 2006 quitclaim deed was also recorded the day it was executed.

The 2006 quitclaim deed listed the following twelve previous conveyances as exceptions:

1.   R. Scott Stewart, Jr., and David W. Stewart, 8.5 acres, more or less. See Deed Book R-2, pages 213-214, Register's Office of Meigs Co., TN.
2.   Paul J. Breedwell and wife, Sarah Jane Breedwell, 1 acre, more or less. See Deed Book T-2, 652-654, Register's Office of Meigs Co., TN.
3.   Michael Morrow and wife, Ima J. Morrow, rectangular lot 150 feet by 250 feet. See Deed Book Y-2, pages 728-729, Register's Office of Meigs Co., TN.

---

[1]For ease of readability and reference, we will refer in this opinion to Bobbie Sue Morrow by full name, Michael R. Morrow as "Defendant," and the plaintiffs collectively as "Plaintiffs" or individually by name when necessary.

[2]Ima Jean Morrow is not a party to this action, and the appellate record contains no further information regarding her interest in the Disputed Area.

[3]Through an agreement stated following the property description in the 2006 quitclaim deed, Alan Morrow was granted a life estate in the elder Morrows' original house on the Property, where he still lived at time of trial.

4. Merle C. Elliott and wife, Joyce M. Elliott[,] Lot 175 feet by 120 feet by 175 feet by 120 feet. See Deed Book Z-2, pages 768-769, Register's Office of Meigs Co., TN.

5. Larry L. Wilson, 20 foot right of way easement. See E-3, pages 394-395, Register's Office of Meigs Co., TN.

6. Michael R. Morrow and wife, Ima Jean Morrow, 28.33 acres, more or less. See Deed Book K-3, pages 215-216, Register's Office of Meigs Co., TN.

7. Robin Harris, .56 acre. See Deed Book T-3, pages 321-322, Register's Office of Meigs Co., TN.

8. Peter A. Thevenot, et ux., .16 acre, more or less. See Deed Book T-3, pages 332-334, Register's Office of Meigs Co., TN.

9. Ronald O'Daniel and wife, Teresa O'Daniel, 2.3 acres, more or less. See Deed Book X-3, pages 579-583, Register's Office of Meigs Co., TN.

10. Michael R. Morrow, 3.41 acres, more or less. See Deed Book L-4, pages 492-494, Register's Office of Meigs Co., TN.

11. Ima Jean Morrow, 2.17 acres, more or less. See Deed Book S-4, pages 796-798, Register's Office of Meigs Co., TN.

12. Harold Goodman, .87 acre. See Deed Book R-4, pages 31-32, Register's Office of Meigs Co., TN.

On February 13, 2007, Bobbie Sue Morrow, then residing in a nursing home, executed a quitclaim deed, conveying to Defendant any interest she held in the 28.33 acres described by the 1988 survey. The property description contained in this deed included the metes and bounds for the entire 28.33 acres. Defendant recorded the quitclaim deed on February 15, 2007. Bobbie Sue Morrow died two months later.

Plaintiffs filed the instant action on February 1, 2012, requesting, *inter alia*, clear title to the Disputed Area and damages for Defendant's alleged proceeds received and waste committed through timber cutting. Defendant filed an answer on April 10, 2012, averring that he was the rightful owner of the Disputed Area by virtue of the 1988 conveyance from his mother and that the omission of a metes and bounds description for the area on the 1988 deed was due to a scrivener's error. Defendant subsequently amended his answer to aver that in the alternative, he maintained ownership of the Disputed Area through adverse possession.

Following a bench trial held on November 13, 2012, the trial court dismissed Plaintiffs' complaint and vested fee simple title in favor of Defendant, ruling that Bobbie Sue Morrow's intent relative to the 1988 deed was to convey Defendant the entire 28.33 acres, inclusive of the Disputed Area. The court entered an order on January 17, 2013, finding

specifically that the discrepancy in the deed description between the acreage stated versus the metes and bounds description created an ambiguity in the deed that required analysis of the grantor's intent. Having found that Bobbie Sue Morrow's intent had been to convey the entire 28.33-acre parcel to Defendant, the court implicitly determined that ownership of the Disputed Area was unaffected by the 1999 deed conveying the remainder of Ms. Morrow's Property to other siblings. Plaintiffs timely appealed.

## II. Issue Presented

Plaintiffs present one issue on appeal, which we restate as follows:

Whether the trial court erred by determining that the January 12, 1988 deed from Bobbie Sue Morrow to Defendant conveyed all of the 28.33-acre tract shown on the 1988 survey referenced by the deed.

## III. Standard of Review

In this non-jury real property dispute, our review is *de novo* upon the record, with a presumption of correctness as to the trial court's findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Shew v. Bawgus*, 227 S.W.3d 569, 576 (Tenn. Ct. App. 2007) (citing *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001)). "In order for the evidence to preponderate against the trial court's finding of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006) (citing *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001)). We review the trial court's conclusions of law *de novo* with no presumption of correctness. *Shew*, 227 S.W.3d at 576 (citing *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001)). "In construing a deed, our primary task is to ascertain the grantor's intent from the words of the deed as a whole and from the surrounding circumstances." *Griffis v. Davidson County Metro. Gov't*, 164 S.W.3d 267, 274 (Tenn. 2005).

## IV. Deed Interpretation

Plaintiffs contend that the trial court erred by determining that Bobbie Sue Morrow's January 12, 1988 conveyance to Defendant and his then-wife, via warranty deed, included the Disputed Area. In raising this sole issue on appeal, Plaintiffs acknowledge that their claim to the Disputed Area hinges on whether it was included in that 1988 conveyance. If, as the trial court found, Bobbie Sue Morrow conveyed 28.33 acres to Defendant and his wife in 1988, the 15-acre Disputed Area would have been included in the 1988 conveyance and therefore would have been unaffected by Bobbie Sue Morrow's 1999 conveyance via

warranty deed of her remaining portion of the 105-acre Property to Alan Morrow and Plaintiff Robbin Morrow Elliott. If, however, the Disputed Area was not included in the 1988 conveyance, Alan Morrow and Robbin Morrow Elliott would have obtained title to it through the 1999 deed and subsequently conveyed that title to Plaintiffs through the 2006 quitclaim deed. Defendant contends that the trial court properly found the Disputed Area to be conveyed to him by Bobbie Sue Morrow by reason of the 1988 deed. We agree with Defendant.

In its order vesting title to the Disputed Area in favor of Defendant and dismissing Plaintiffs' complaint, the trial court made the following specific factual findings in pertinent part:

> The Court feels the real issue is what the parties' mother, Bobbie Sue Morrow, the original owner and grantor of the disputed property intended in 1988, when she deeded all or a portion of said property to her son Michael R. Morrow. The Court finds the metes and bounds description in the deed conveys some 13 acres, comprising part of the tract shown in Exhibit 1, but on its face the deed recites a conveyance of 28.33 acres to Michael R. Morrow and the survey, referenced in the deed, also shows a piece of property conveying 28.33 acres.
> The Court finds there was a line inserted in the deed, which is Exhibit 4, which is not shown on the survey in Exhibit 1. The Court [finds] said line was added by Attorney Michael Verstynen, or someone in his office, who drew the original deed.
> The Court is convinced by all the proof and testimony that it was the intent of the late Bobbie Sue Morrow to convey to her son, Michael R. Morrow, the 28.33 acres in its entirety.
> The Court finds there is ambiguity in the deed. The Court finds when Michael R. Morrow originally received the deed from Mr. Verstynen he would not have noticed anything strange about the deed because it said on its face it conveyed 28.33 acres. Michael R. Morrow placed the deed in the hope chest and forgot about it.
> Only later, when someone looked at the survey and compared it to the deed, did it become apparent there was a problem, and a difference between the metes and bounds description in the deed and the survey.
> The Court finds Mr. Verstynen did not expressly remember being told by Ms. Bobbie Sue Morrow to draw a line across the 30 foot gap, but he is interpreting she did tell him that, because he would not have done so otherwise.

The Court finds from looking at the deed, Mr. Verstynen could have been deceived by the way the property was drawn on the survey, such that it may have appeared that 28 acres would have been conveyed by dividing the eastern and western portions of the property.

The Court further finds there are other factors which support the Court's ruling, in that in 1999 Bobbie Sue Morrow conveyed the remainder of the property to the Plaintiffs in this cause, but the deed states she conveyed to them the entire 105 acres to them [sic]. The Court finds it is impossible to look at that deed and determine what she intended to [convey] because there had been numerous prior conveyances from the original 105 acres, which are not noted on said deed.

It wasn't until 2006, when Alan Morrow and Robbin Morrow conveyed their interest to the Plaintiffs by Quitclaim Deed that a title search was done and the prior conveyances were noted. Included in the prior conveyances listed on that deed was the earlier conveyance of 28.33 acres to Michael Morrow.

The Court ultimately finds the [question] in the 1988 deed is whether it contained a mistake in the description or a mistake in the acreage. The Court finds from all the facts it was a mistake in the acreage.

The Court finds one of the best ways to determine what the intention of Bobbie Sue Morrow was in conveying the property in the 1988 deed, is to look at what she did in February, 2007. Though she may have been physically impaired at that time, the Court has heard no testimony to indicate that Bobbie Sue Morrow was mentally incompetent or was under any duress or undue influence.

By the 2007 Quitclaim Deed, Bobbie Sue Morrow conveyed the entire 28.33 acres to Michael R. Morrow. Lisa Combs, who has been a part of this situation for a number of years, testified a Deed of Correction had been requested and Bobbie Sue Morrow wanted to make sure the deed correctly conveyed only that property which it had been her intention to convey to Michael R. Morrow previously. The Court finds this is a clear indication Bobbie Sue Morrow was interested in the quantity of property conveyed and not necessarily in the description of the property conveyed. It appears to the Court Bobbie Sue Morrow was thinking about the number of acres being conveyed [in] 1988, and not how that read in terms of metes and bounds description of the property.

From all of which the Court finds it was the intent of Bobbie Sue Morrow to convey the entire 28.33 acres to Michael R. Morrow in 1988, and finds all the evidence preponderates in favor of this finding, and it is therefore

**ORDERED** that Michael R. Morrow is vested with a fee simple interest in the following described real property . . . .

(Paragraph numbering omitted.)

The parties do not dispute and the evidence supports the trial court's finding that the 1988 warranty deed conveying land from Bobbie Sue Morrow to Defendant contains an ambiguity. Specifically, the total acreage conveyed is represented as 28.33 acres, but the property described includes a metes and bounds description for only an approximately 13-acre portion of the 28.33 acres. The survey referenced in the 1988 deed depicts the 28.33 acres as shaped like an hourglass with a 30-foot gap separating the western and eastern ends of the hourglass. The metes and bounds description on the deed encloses the western section only. Michael Verstynen, the attorney who drafted both the 1988 deed and the 2007 quitclaim deed from Bobbie Sue Morrow to Defendant, testified at trial that it was apparent upon his review of the 1988 deed that the ambiguity arose when an error in drafting created the discrepancy between the metes and bounds of the property description and the stated number of acres conveyed.

In analyzing the ambiguity at issue, we must first note an inconsistency in the trial court's order that appears to be a typographical error when read in context of the entire order. In summarizing its findings, the court stated in part:

> The Court ultimately finds the [question] in the 1988 deed is whether it contained a mistake in the description or a mistake in the acreage. The Court finds from all the facts it was a mistake in the acreage.

Plaintiffs cite this paragraph to argue in their brief on appeal that the trial court "recognized that the mistake by Attorney Verstynen was not with the metes and bounds description but with his reference to 28.33 acres." The totality of the trial court's factual findings, however, indicate that the court was convinced Mr. Verstynen erred in the description he included on the 1988 deed (see full quotation above). The court concluded, *inter alia*, that Mr. Verstynen "could have been deceived by the way the property was drawn on the survey, such that it may have appeared that 28 acres would have been conveyed by dividing the eastern and western portions of the property," and that Bobbie Sue Morrow was thinking in 1988 "about the number of acres being conveyed . . . and not how that read in terms of metes and bounds description of the property." Moreover, the trial court's order vesting fee simple ownership of the full 28.33 acres to Defendant was clearly a result of the court's conclusion that the mistake on the 2008 deed was in the property description rather than the acreage. We determine that this apparent typographical error in the trial court's order does not affect our analysis when taken in the context of the entire order and final judgment. *See, e.g, In re*

*Caleb L.C.*, 362 S.W.3d 581, 598 (Tenn. Ct. App. 2011) (finding that typographical errors noted by the appellant in the trial court's detailed judgment did not affect the overall clarity of the judgment or this Court's analysis).

In its order, the trial court incorporated the property description from the 2007 quitclaim deed and vested Defendant with a fee simple interest in the entire 28.33 acres, described as follows:

> **BEGINNING** at an iron pin corner, same being the common corner of Michael R. Morrow, 20 foot right of way and the tract herein; thence North 64 degrees 43 minutes East 526.2 feet to an iron pin corner; thence with Wilson line South 88 degrees 27 minutes East 794.1 feet to an iron pin corner **and 20" cedar tree; thence with Wilson line North 02 degrees 00 minutes East 686.3 feet to an iron pin corner; thence East 831.5 feet to a placed stone and fencepost at R.S. Stewart line; thence with R.S. Stewart South 04 degrees 52 minutes West 924 feet to an iron pin corner; thence North 75 degrees 16 minutes West 804.7 to an iron pin corner;** thence South 30 degrees 31 minutes West 312.5 feet to an iron pin; thence South 60 degrees 56 minutes West 743.5 feet to a large hickory tree; thence South 60 degrees 56 minutes West 213 feet to a power pole; thence South 60 degrees 56 feet West 43.5 feet to an iron pin corner at Morrison Road; thence North 23 degrees 56 minutes West **2**36 feet to an iron pin; thence North 30 degrees 07 minutes West 135 feet to an iron pin corner; thence North 53 degrees 11 minutes East 150 feet to an iron pin corner; thence North 50 degrees 21 minutes West 250 feet to the **BEGINNING** corner, containing 28.33 acres, more or less.

(Emphasis added to all but "**BEGINNING**.") IN contrast, the property description in the original 1988 conveyance to Defendant, although ending with a statement that it contains 28.33 acres, actually describes only approximately 13 acres and appears on that deed as follows:

> BEGINNING at an iron pin corner, same being the common corner of Michael R. Morrow, 20 foot right of way and the tract herein; thence North 64° 43' East 526.2 feet to an iron pin corner; thence with Wilson line South 88° 27' East 794.1 feet to an iron pin corner**; thence South 02° 00' West 30 feet to an iron pin corner;** thence South 30° 31' West 312.5 feet to an iron pin; thence South 60° 56' West 743.5 feet to a large hickory tree; thence South 60° 56' West 213 feet to a power pole; thence South 60° 56' West 43.5 feet to an iron pin corner at Morrison Road; thence North 23° 56' West **2**63 feet to an iron pin; thence North 30° 07' West 135 feet to an iron pin corner; thence

-8-

North 53° 11' East 150 feet to an iron pin corner; thence North 50° 21' West 250 feet to the beginning corner, containing 28.33 acres, more or less.

(Emphasis added to show substantive differences between descriptions.)

Having found an ambiguity in the 1988 deed between the acreage affirmatively stated and the metes and bounds of the property description, the trial court properly considered extrinsic evidence of the grantor's intent regarding the circumstances surrounding the conveyance outside the four corners of the deed. *See Gillham v. Scepter, Inc.*, No. M2009-01728-COA-R3-CV, 2010 WL 3852204 at *2 (Tenn. Ct. App. Sept. 28, 2010) (noting an "established rule of law that the grantor's intent 'is to be determined from the four corners of the instrument if possible,' with extrinsic evidence to be "considered in construing a deed only in the event of an ambiguity" (quoting *Bennett v. Langham*, 383 S.W.2d 16, 18 (Tenn. 1964)). Generally, when a deed contains a conflict between the quantity of acreage and the calls in a description, the description will control. *Williams v. Daniel*, 545 S.W.2d 120, 124 (Tenn. Ct. App. 1976); *Hardin v. Chapman*, 255 S.W.2d 707, 711 (Tenn. Ct. App. 1952). Of primary consideration, however, is ascertaining the intention of the grantor. *See id.*

The crux of Plaintiffs' argument is that the trial court failed to correctly interpret and weigh Mr. Verstynen's testimony. Mr. Verstynen testified that he had practiced primarily property law in Meigs County for approximately thirty-five years. In 1988, Bobbie Sue Morrow retained him to prepare the deed conveying title to a portion of her land to the Defendant. Mr. Verstynen stated that he reviewed the deed at the register's office in preparation for testimony but that he no longer retained a file in his office regarding that 1988 conveyance. In reviewing the 1988 deed, Mr. Verstynen stated he drew the line across a thirty-foot gap in the property that ultimately divided the approximately 13-acre and 15-acre portions claimed by Defendant. Mr. Verstynen acknowledged that this dividing line was not on the 1988 survey referenced by the deed and also prepared in 1988. He said that while preparing the 1988 deed, he spoke only to Bobbie Sue Morrow and not to any of her children.

When questioned at trial regarding why he added the dividing line and limited the description in the deed to the metes and bounds of the thirteen-acre portion, Mr. Verstynen said, "That would have been her [Bobbie Sue Morrow's] instructions." He did not, however, remember a specific conversation with Bobbie Sue Morrow. He explained: "Most likely she gave me an explanation of why, but I don't have any recollection of why she would have told me. I just know that without her instruction I wouldn't have had any reason to cross there." Mr. Verstynen opined that the acreage, not the description, in the 1988 deed was incorrect as to Bobbie Sue Morrow's intent. When questioned regarding how the acreage came to be written on the deed, Mr. Verstynen described his general practice in such situations, stating:

The procedure that we use in my office is that I would either read the description off to the secretary and she would take it in shorthand and then convert it and then match it to the survey, or I drew it out.

The 28.33 acres, as I stated covers the whole thing [survey], because it's on that side, either myself or my secretary entered that into the deed.

Plaintiffs ask this Court to review Mr. Verstynen's testimony *de novo* because, they assert, such a review "can lead to only one conclusion that he drafted the metes and bounds description from the survey based upon his communications with and instructions from the Grantor, Bobbie Sue Morrow." As Plaintiffs acknowledge, the trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002). We also, however, must afford considerable deference to the weight given live testimony by the trial court. *See Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011) ("When credibility and weight to be given testimony are involved, considerable deference must be afforded to the trial court when the trial judge had the opportunity to observe the witness' demeanor and to hear in-court testimony."); *see also Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999) (contrasting the deference on appeal afforded a trial court's assessment of live witness testimony against the deference not afforded to a trial court's assessment of depositions and other documentary proof within a "cold" record).

We, like Plaintiffs, find no indication in the record that the trial court did not find Mr. Verstynen to be a credible witness. Mr. Verstynen testified as to his general process when drafting a deed and his certainty that in drafting the 1988 deed at issue, he followed his client's, Bobbie Sue Morrow's, instructions. Understandably, however, he was not able to recall twenty-four years later the content of those instructions or any specific conversations with the grantor. He had reviewed the deed and survey, but he acknowledged that he did not have a file or notes regarding the grantor's instructions to review. Affording considerable deference to the trial court's assessment of testimony at trial, we are unable to conclude that the court erred in the weight it afforded Mr. Verstynen's testimony in determining the circumstances surrounding the drafting of the 1988 deed. *See generally Griffis*, 164 S.W.3d at 274.

In support of their assertion that the ambiguity in the 1988 deed should be resolved in favor of the metes and bounds description rather than the number of acres recited, Plaintiffs rely in part on *Tamco Supply v. Pollard*, 37 S.W.3d 905 (Tenn. Ct. App. 2000). The issue in *Tamco Supply* was whether a sale of real property was a "sale in gross," and therefore not significantly affected by an erroneous description in the corresponding deed, or a "sale by the acre," for which an erroneous description would justify an adjustment in the purchase price. *Id.* at 909-10. The proposition cited by Plaintiffs–that when land is

"'described by certain monuments, lines, and courses, and also as containing a certain quantity,'" the quantity of acreage is to be considered "'merely descriptive'" and not a "'covenant'"–refers in the decision to representations in sales contracts and is specifically applied to a sale in gross. *See id.* at 910 (quoting 77 Am. Jur. 2d *Vendor and Purchaser* § 99 (1975)); *see also Williams*, 545 S.W.2d at 124 (affirming the trial court's finding that a five-acre discrepancy between the acreage recited in the deed and survey at issue did not warrant reformation of the deed or partial refund of the purchase price where the conveyance was a sale in gross). Inasmuch as the conveyance at issue in the instant case was not a sale in gross and the discrepancy on the deed was more than half of the acreage purportedly conveyed, Plaintiffs' reliance on *Tamco Supply* is misplaced.

In addition to Mr. Verstynen's testimony, the trial court, in determining Bobbie Sue Morrow's intent when executing the 1988 conveyance, also noted (1) the ambiguity relative to acreage conveyed of the 1999 conveyance via quitclaim deed from Bobbie Sue Morrow to Robbin Morrow Elliott and Alan Morrow; (2) the exception listed, pursuant to a title search, for Defendant's property noted on the 2006 conveyance via quitclaim deed from Robbin Morrow Elliott and Alan Morrow to Plaintiffs; and (3) the 2007 conveyance via quitclaim deed from Bobbie Sue Morrow to Defendant. The 1999 deed purports on its face to convey property described as the entire 105 acres originally acquired by Hubert and Bobbie Sue Morrow in 1950. The trial court found that because there had been numerous conveyances from the 105 acres prior to 1999, it was "impossible to look at that deed and determine what [Bobbie Sue Morrow] intended to [convey]."

It is undisputed that no title search was conducted during preparation of the 1999 deed but that a title search was conducted during preparation of the 2006 conveyance via quitclaim deed of Robbin Morrow Elliott's and Alan Morrow's interest in the Property to Plaintiffs. The "prior conveyances" noted by the trial court as exceptions to the subject conveyance on the 2006 quitclaim deed included twelve in all, including the 1988 conveyance to Defendant (listed as 28.33 acres) and smaller conveyances, ranging from a 20-foot right-of-way easement to an 8.5-acre conveyance to individuals not involved in this action. Despite the inclusion of the Disputed Area in the 28.33-acre exception noted on the 2006 deed, Plaintiff Larry Morrow testified that he did not know Defendant claimed to own the Disputed Area until Defendant filed the 2007 quitclaim deed.

The trial court found the circumstances surrounding the 2007 conveyance via quitclaim deed to be "one of the best ways to determine what the intention of Bobbie Sue Morrow was in conveying the property in the 1988 deed." As the trial court noted, Defendant testified that after recording the 1988 deed, he checked it to determine that the acreage was correct and then placed it in his hope chest with the survey he had retained William W. Roberts to prepare. He and his live-in girlfriend, Lisa Combs, both testified that

Ms. Combs handled Defendant's paperwork as a matter of course and that she became concerned when, while going through papers in the hope chest in 2007, she discovered that the 1988 survey had never been recorded. Ms. Combs further testified that she noticed the property description on the deed did not include "a few pins" she thought it should in order to encompass all 28.33 acres. At Defendant's request, Ms. Combs took the survey to the office of Tim Proffit, the Meigs County Property Assessor, to have it recorded. According to Ms. Combs, she and Mr. Proffit reviewed the survey together with the 1988 deed, and Mr. Proffit noted the discrepancy at issue here. He advised Ms. Combs to contact the attorney who originally drafted the deed.

Ms. Combs testified that she took the deed and survey to Mr. Verstynen's office and explained the situation to his secretary, who told her that she needed to have a deed of correction drafted. Ms. Combs stated that approximately three days later, Mr. Verstynen's office called and said that Mr. Verstynen had drafted a quitclaim deed rather than a deed of correction. Mr. Verstynen acknowledged that in February 2007 he prepared a quitclaim deed, granting 28.33 acres from Bobbie Sue Morrow to Defendant and "encompass[ing] all of the property shown on the survey," at the request of a woman who called or visited his office on Defendant's behalf. Mr. Verstynen said that he did not recall any instruction to draft a deed of correction and that he did not speak to Bobbie Sue Morrow while preparing the 2007 deed.

When questioned regarding how Bobbie Sue Morrow came to sign the 2007 deed, both the Defendant and Ms. Combs testified that they went to the nursing home where Bobbie Sue Morrow was living. Defendant then explained to his mother that the property description contained in the 1988 deed did not encompass the entire 28.33 acres. According to Ms. Combs, when Defendant requested that his mother sign the 2007 deed, she asked for reassurance that it was for the property she had already conveyed to Defendant, and Defendant reassured her that it was. The Defendant and Ms. Combs both also testified that they drove Bobbie Sue Morrow from the nursing home to the courthouse and that a notary public from the property assessor's office came out to the car to witness Bobbie Sue Morrow's signature on the 2007 deed.

As the trial court noted, no proof was offered at trial that Bobbie Sue Morrow was mentally impaired in February 2007 or incapable of understanding the document she was signing. Similarly, no proof was presented that anyone exerted undue influence to obtain Bobbie Sue Morrow's signature on any of the conveyances she executed regarding her interest in the Property. The trial court found that Bobbie Sue Morrow's actions in executing the 2007 deed indicated that her original intent in 1988 was to convey the Disputed Area to Defendant. Upon our thorough review of the record and affording considerable deference to the credibility and weight given to witnesses' testimony by the trial court, we determine

that the evidence does not preponderate against the trial court's finding that Bobbie Sue Morrow intended to convey 28.33 acres to Defendant via the 1988 warranty deed.

Plaintiffs also argue that the trial court should have afforded them a presumption of ownership over the Disputed Property pursuant to Tennessee Code Annotated § 28-2-109 (2000), which provides:

> Any person holding any real estate or land of any kind, or any legal or equitable interest therein, who has paid, or who and those through whom such person claims have paid, the state and county taxes on the same for more then [sic] twenty (20) years continuously prior to the date when any question arises in any of the courts of this state concerning the same, and who has had or who and those through whom such person claims have had, such person's deed, conveyance, grant or other assurance of title recorded in the register's office of the county in which the land lies, for such period of more than twenty (20) years, shall be presumed prima facie to be the legal owner of such land.

The trial court stated in its Order that in reaching a decision, it considered all of the evidence presented by the parties, including "tax cards" submitted by Plaintiffs and Defendant. The evidence shows that Defendant presented tax receipts for the years 1993 through 1996, demonstrating that he paid real property taxes on 29.2 acres in those years. His tax receipt for 2006, the year Plaintiffs recorded their quitclaim deed, revealed Defendant paying taxes on only 16.5 acres. Defendant acknowledged that after recording the 2007 quitclaim deed, he requested that the property assessor amend the tax map so that it would reflect his ownership of the Disputed Area. He asserted that this request was simply to return the tax assessment to what it had been before Plaintiffs recorded the 2006 deed. Plaintiffs presented tax notices for 2006 and 2007 that demonstrated their total acreage taxed was reduced from 56.9 acres in 2006 to 41.4 acres in 2007. Larry Morrow acknowledged at trial that the total acreage taxed to Plaintiffs corresponded to the number of acres Plaintiffs retained out of the original 105 acres when the exceptions listed on the 2006 deed were subtracted, with the difference between 56.9 and 41.4 acres being whether the Disputed Area was attributed to Plaintiffs or to Defendant.

We determine that the evidence does not preponderate against the trial court's finding that all of the surrounding circumstances support a finding that it was Bobbie Sue Morrow's intent to convey the Disputed Property to Defendant in 1988. We conclude that the trial court did not err in dismissing Plaintiffs' complaint and vesting Defendant with a fee simple interest in the 28.33-acre parcel, including the approximately 15-acre Disputed Area.

## V. Conclusion

For the reasons stated above, the judgment of the trial court granting Defendant a fee simple interest in the 28.33-acre parcel described in the court's order, inclusive of the approximately 15-acre Disputed Area, is affirmed, as is the trial court's dismissal of Plaintiffs' complaint. Costs on appeal are taxed to the appellants, Robbin Morrow Elliott, Larry D. Morrow, and Joyce Elliott. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE